**CORRECTED**

# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 22-1627V

| | |
|---|---|
| HOLLY LAPOINTE,<br><br>                    Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                    Respondent. | Chief Special Master Corcoran<br><br>Filed: January 9, 2026 |

*Catherine Wallace Costigan, Mct Law, Washington, DC, for Petitioner.*

*Camille Michelle Collett, U.S. Department of Justice, Washington, DC, for Respondent.*

### RULING ON ENTITLEMENT AND DECISION AWARDING DAMAGES[1]

On November 1, 2022, Holly LaPointe filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"), alleging that she suffered a shoulder injury related to vaccine administration ("SIRVA"), as defined in the Vaccine Injury Table, or in the alternative caused-in-fact injury, after receiving an influenza ("flu") vaccine on October 21, 2020. Petition at 1, ¶ 1, 19-20, 22.

For the reasons described below, and after briefing by the parties, I find that Petitioner is entitled compensation, and I award damages in the amount of **$79,182.37**,

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

**representing $75,000.00 for actual pain and suffering, plus $4,182.37 for past unreimbursed expenses.**

    I.    **Factual Findings and Ruling on Entitlement**

    **A. Legal Standards**

Before compensation can be awarded under the Vaccine Act, a petitioner must demonstrate, by a preponderance of evidence, all matters required under Section 11(c)(1), including the factual circumstances surrounding his claim. Section 13(a)(1)(A). In making this determination, the special master or court should consider the record as a whole. Section 13(a)(1). Petitioner's allegations must be supported by medical records or by medical opinion. *Id.*

To resolve factual issues, the special master must weigh the evidence presented, which may include contemporaneous medical records and testimony. *See Burns v. Sec'y of Health & Hum. Servs.,* 3 F.3d 415, 417 (Fed. Cir. 1993) (explaining that a special master must decide what weight to give evidence including oral testimony and contemporaneous medical records). Contemporaneous medical records are presumed to be accurate. *See Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993). To overcome the presumptive accuracy of medical records testimony, a petitioner may present testimony which is "consistent, clear, cogent, and compelling." *Sanchez v. Sec'y of Health & Hum. Servs.,* No. 11–685V, 2013 WL 1880825, at *3 (Fed. Cl. Spec. Mstr. Apr. 10, 2013) (citing *Blutstein v. Sec'y of Health & Hum. Servs.,* No. 90–2808V, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)).

In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[3] a petitioner must establish that she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48

---

[3] In summary, a petitioner must establish that he received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of his injury for more than six months, died from his injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury. *See* Section 11(c)(1)(A)(B)(D)(E).

2

hours of the administration of a flu vaccine. 42 C.F. R. § 100.3(a)(XIV)(B). The criteria establishing a SIRVA under the accompanying Qualifications and Aids to Interpretation ("QAI") are as follows:

> Shoulder injury related to vaccine administration (SIRVA). SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g. tendons, ligaments, bursae, etc.). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurological abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:
>
> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
>
> (ii) Pain occurs within the specified time frame;
>
> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and
>
> (iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10) (2017).

### B. Factual Finding Regarding QAI Criteria for Table SIRVA

The only Table requirement for SIRVA that Respondent contests is the second criterion - whether Petitioner experienced pain onset within 48 hours of vaccination. Rule 4(c) Report, filed Sept. 20, 2024, at 10-11; *see* 42 C.F.R. § 100.3(a)XIV(B) & (c)(10)(ii) (requiring first symptom and pain onset specifically within 48 hours of vaccination). To support his position, Respondent emphasizes Petitioner's account of left arm pain for one

month when first seeking treatment from her primary care provider on November 25, 2020 – which he strictly interprets to mean a pain onset six-days post-vaccination, Petitioner's statement that "she was 'worried' that the vaccine could have caused her pain" – which he maintains showed a lack of "a more concrete sense of the causal relationship," and Petitioner's failure to report left shoulder symptoms during five intervening appointments within three weeks of vaccination. *Id.* at 10. Even buttressed by the affidavit evidence Petitioner provided, Respondent insists "the medical records fail to establish that [P]etitioner developed shoulder pain within 48 hours." *Id.* at 11.

Equating her circumstances with those found in *Williams*,[4] Petitioner argues that her repeated reports of left arm pain following vaccination, even if they sometimes involve vague descriptions, establish the required pain onset within 48 hours of vaccination. Petitioner's Memorandum of Law in Support of Findings of Fact and Conclusions of Law Regarding Entitlement and Damages ("Brief"), filed Oct. 9, 2024, at 15-17, ECF No. 38. She discounts her failure to mention any left arm pain at multiple appointments during the three weeks post-vaccination, stressing that these visits were related to treatment of benign paroxysmal positional vertigo ("BPPV")[5] - a "disorienting and frightening" condition (*id.* at 18), and her upcoming knee surgery;[6] and arguing that a treatment delay of less than a month is not unreasonable. Brief at 17-19. Additionally, Petitioner claims that she mentioned her symptoms at the PCP visit on November 9, 2020, and that a colleague's declaration supports this assertion. *Id.* at 17 (citing Exs. 17, 19).[7] Regarding Respondent's strict interpretation of her reported pain onset when first seeking treatment, Petitioner insists that Respondent ignores other entries within the same record which, taken in their entirety, supports, rather than undercuts a more immediate pain onset. *Id.* at 14.

---

[4] *Williams v. Sec'y of Health & Hum. Servs.*, No. 17-1046V, 2020 WL 3579763 (Fed. Cl. Spec. Mstr. Apr. 1, 2020).

[5] Benign paroxysmal positional vertigo involves "recurrent brief periods of positional vertigo and nystagmus occurring when the head is placed in certain positions such as with one ear down." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY ("DORLAND'S") at 1052 (32th ed. 2012).

[6] Petitioner had previously undergone right knee surgery in 2017, and began to experience similar symptoms again in 2019. Ex. 2 at 24-37 (2017 treatment and surgery), 22 (showing similar symptoms in May 2019). By late October 2020, it was determined that she should undergo arthroscopic surgery (*id.* at 13-14), which was performed on December 4, 2020 (*id.* at 10-12).

[7] Both declarations, from herself and her colleague, were signed under penalty of perjury as required pursuant to 28 U.S.C.A. § 1746. Ex. 17, filed Nov. 1, 2022, at 1, ECF No. 5; Ex. 19, filed Feb. 2, 2023, at 3, ECF No. 9. Additionally, when providing her declaration, Petitioner refiled her colleague's declaration, along with additional documentation related to its certification. *See* Ex. 20, ECF No. 9.

4

In their responsive briefing, the parties reiterate the arguments set forth in their initial filings. Respondent's Brief in Response to Brief ("Opp."), filed Dec. 4, 2024, ECF No. 41; Petitioner's Reply to Opp. ("Reply"), filed Dec. 5, 2024, ECF No. 42.

A review of the record in this case reveals the preponderant evidence needed to establish the required pain onset. Petitioner's failure to mention any symptoms during the initial three weeks post-vaccination is reasonable, especially since she was pursuing treatment for other serious, well-established conditions.[8] As I have stated on numerous occasions, individuals suffering from vaccine-related symptoms will often delay seeking treatment for at least a few weeks, believing that their symptoms will resolve on their own. *Matthews v. Sec'y of Health & Hum. Servs.,* No. 22-1396V, 2024 WL 3026843, at *6 (Fed. Cl. Spec. Mstr. May 15, 2024).

Even if I determined there was not sufficient evidence to support Petitioner's assertion - that she mentioned her symptoms on November 9, 2020, it is clear that she complained of left arm pain on November 25, 2020, only one-month post-vaccination and just prior to her December 4, 2020 knee surgery. Ex. 5 at 48. And her failures to definitively state that her pain was present for 36 days, or to unequivocally link its origin to the flu vaccine, are not fatal. In fact, it would be illogical to expect Petitioner to use such precise language, not usually seen in medical records, or to preempt her PCP by reaching a conclusion as to her symptoms etiology without hearing the PCP's assessment.

Furthermore, Petitioner consistently described a concurrent pain onset and linked her symptoms to her flu vaccine at appointments thereafter. Ex. 5 at 11, 13, 47-50; Ex. 10 at 115. Thus, I find there is preponderant evidence to show Petitioner's pain began within 48 hours of vaccination.

Respondent has raised no other entitlement objection, and the record contains sufficient evidence showing Petitioner has satisfied the other QAI criteria, and. *See* 42 C.F.R. § 100.3(c)(10)(i), (iii)-(iv). There is no evidence of prior left shoulder symptoms or a current condition that constitutes a viable alternative cause. *See, generally,* Exs. 2, 5 (PCP and orthopedic records). Additionally, Petitioner's pain and decreased range of motion were limited to her left shoulder. Ex. 14 at 13. Thus, all elements of a Table SIRVA claim have been preponderantly established.

---

[8] Seven days post-vaccination, Petitioner attended an orthopedic appointment for her right knee pain at which time it was determined that she should undergo arthroscopic surgery. Ex. 2 at 13-14. She underwent a CT on November 5, 2020, and was seen by her PCP for pre-surgery clearance on November 9, 2020. Ex. 8 at 24 (CT results); Ex. 5 at 45 (in chronologic order). Petition also attended three physical therapy sessions for her BPPV in October and November 2020. Ex. 4 at 198-215.

### C. Other Requirements for Entitlement

Because Petitioner has satisfied the requirements of a Table SIRVA, she need not prove causation. Section 11(c)(1)(C). However, she must satisfy the other requirements of Section 11(c) regarding the vaccination received, the duration and severity of her injury, and the lack of other award or settlement. Section 11(c)(A), (B), and (D). Respondent does not dispute that Petitioner has satisfied these requirements in this case, and the overall record contains preponderant evidence which fulfills these additional requirements.

## II. Compensation to be Awarded

### A. Legal Standards for Pain and Suffering Awards

In another recent decision, I discussed at length the legal standard to be considered in determining damages and prior SIRVA compensation within SPU. I fully adopt and hereby incorporate my prior discussion in Sections I and II of *Matthews v. Sec'y of Health & Hum. Servs.*, No. 22-1396V, 2025 WL 2606607, at *1-3 (Fed. Cl. Spec. Mstr. Aug. 13, 2025).

In sum, compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering.[9]

### B. Parties Arguments

The parties agree Petitioner should be awarded $4,182.37 for past unreimbursed expenses, comprised of $3,533.74 for out-of-pocket costs and $648.63 in mileage costs calculated using the IRS business rate. Brief at 22; Opp. at 16; Reply at 4. Thus, the only area of disagreement is the amount of compensation which should be awarded for Petitioner's pain and suffering.

---

[9] *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) (quoting *McAllister v. Sec'y of Health & Hum. Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

Emphasizing the more than three-year duration of her SIRVA, as well as the short amount of time before seeking medical attention which she insists was only 19 days,[10] Petitioner maintains that she should be awarded $85,000.00 for past pain and suffering. Brief at 22. She notes that her pain severity was five out of ten at her initial occupational therapy ("OT") session, and "could get as bad as 8/10." *Id.* at 23. And she underwent two MRIs, received two steroid injections, and attended 22 OT sessions. *Id.* at 22-23. Petitioner favorably compares the facts and circumstances in her case to those experienced by the petitioners in *Mantagas, Gentile,* and *Dhanoa*[11] - decisions featuring awards ranging from $75,000.00 to $85,000.00, with the *Dhanoa* petitioner also receiving a small future pain and suffering award. Brief at 27-28.

Although he cites similar injury duration and treatment – adding that "Petitioner also received prescriptions for diclofenac[12]," Respondent characterizes Petitioner's SIRVA as "not severe." Opp. at 15. Instead, he proposes a past pain and suffering award of $55,000.00. Respondent distinguishes Petitioner's facts and circumstances from those in the cases she cited but agrees that it "is most similar to *Mantagas*." *Id.* "However, rather than arguing that a $10,000.00 enhancement in the award is appropriate, [R]espondent argues that a downgrade of $20,000.00 is appropriate" because Petitioner has not established that the new pathology seen on her second MRI (performed in February 2021) was vaccine related. *Id.* at 15-16 (citing Ex. 29 at 7-8 (MRI results)).

In her reply, Petitioner stresses that Respondent relies upon the same overall duration and needed treatment, but insists these factors support the higher amount she seeks. Reply at 3.

### C.     Appropriate Compensation for Pain and Suffering

In this case, awareness of the injury is not disputed. The record reflects that at all times Petitioner was a competent adult with no impairments that would impact his awareness of her injury. Therefore, I analyze principally the severity and duration of Petitioner's injury. In determining appropriate compensation for pain and suffering, I have

---

[10] Although she insists that she sought medical care at her November 9, 2020 PCP visit, Petitioner argues that even if I reject her assertion, the record unequivocally shows she sought treatment by November 25, 2020, only 35 days post-vaccination. Brief at 22.

[11] *Mantagas v. Sec'y of Health & Hum. Servs.,* No. 20-1720V, 2023 WL 4573855 (Fed. Cl. Spec. Mstr. June 14, 2023) (awarding $75,000.00 for past pain and suffering); *Gentile v. Sec'y of Health & Hum. Servs.,* No. 16-0980V, 2020 WL 3618909 (Fed. Cl. Spec. Mstr. June 5, 2020) (awarding $85,000.00 for past pain and suffering); *Dhana v. Sec'y of Health & Hum. Servs.,* No. 15-1011V, 2018 WL 1221922 (Fed. Cl. Spec. Mstr. Feb. 1, 2018) (awarding $85,000.00 for past pain and suffering and $10,000.00 reduced to net present value for future pain and suffering).

[12] Diclofenac is "a nonsteroidal anti-inflammatory drug derived from phenylacetic acid. DORLAND'S at 513.

7

carefully reviewed and taken into account the complete record in this case, including, but not limited to: Petitioner's medical records, filings, and all assertions made by the parties in written documents. I have also considered prior awards for pain and suffering in both SPU and non-SPU SIRVA cases, and relied upon my experience adjudicating these cases. However, my determination is ultimately based upon the specific circumstances of this case.

The medical records show that Petitioner suffered an initially mild to moderate SIRVA, involving pain at a level of five to eight *with use*,[13] some intermittent tingling,[14] but full range of motion ("ROM").[15] Although she declined two offers of Gabapentin during December 2020, it is important to recognize that she was recovering from knee surgery during this time. Thus, Petitioner may have been leery of adding yet another medication with side effects such as tiredness and dizziness.[16] And she reported no relief from seven OT sessions attended during January 2021. Ex. 5 at 13.

When Petitioner returned for a follow-up appointment in February 2021, her PCP ordered an MRI which revealed bursal surface fraying, moderate glenohumeral joint arthritis, and mild labral degenerative changes. Ex. 5 at 13 (PCP visit), 11 (February 13th MRI). At her next appointment, with an orthopedist in May 2021, she described "increasing discomfort," but exhibited no tenderness upon palpitation and "full, painless range of motion in all planes." Ex. 9 at 3. The orthopedist simply instructed her to "continue with a home-guided exercise program." *Id.* During this time, Petitioner also began collecting the medical records needed to initiate her vaccine claim. *See.,* e.g., Ex. 2 at 1 (medical records request dated April 16, 2021).

Petitioner did not return for treatment until eleven months later, on April 7, 2022. At that orthopedic visit, she complained of increasing pain, discomfort, and limitations in ROM. Ex. 14 at 13. After reviewing the results of the MRI performed in February 2021, the orthopedist administered a steroid injection, ordered a refill of diclofenac and additional OT, and instructed Petitioner to return in four to six weeks. *Id.*

---

[13] Petitioner provided this description in one of the few entries showing Petitioner's pain level, her initial OT evaluation. Ex. 10 at 115. There is a glaring lack of entries in the medical records in this case providing information related to the severity of Petitioner's pain.

[14] In the medical records from Petitioner's initial treatment, there are several entries noting intermittent tingling, as well as pain. *E.g.,* Ex. 5 at 48.

[15] Petitioner's ROM was a routinely assessed as full during the initial seven months of her SIRVA. Ex. 5 at 48; Ex. 9 at 3. She was not described as experiencing limited ROM until early April 2022, more than 18 months post-vaccination. Ex. 14 at 13.

[16] *See* https://my.clevelandclinic.org/health/drugs/21561-gabapentin (last visited Jan. 7, 2026).

At her initial OT session on April 13, 2022, Petitioner reported current pain of three increasing to five at worst. Ex. 23 at 7. By her eighth and second to last OT session on May 11, 2022, her pain had reduced to a range of no pain to four out of ten. *Id.* at 82. During this time, she also returned to her orthopedist for lower back pain.[17] At her May 19, 2022 visit related to left shoulder symptoms, the orthopedist again instructed her to continue her home exercise program.

Petitioner did not return for further treatment until a year later, on May 18, 2023, when she complained of different symptoms, involving her trapezius area and movement of her spine.[18] And she reported a longer period of pain relief (one year) than usually obtained from the treatment she received (specifically the steroid injection) at her next appointment in September 2023. Ex. 22 at 6. Furthermore, as noted by Respondent, a second MRI performed on January 3, 2024, revealed new findings, likely unrelated to her flu vaccine.[19]

Thus, the record lacks sufficient evidence to establish duration beyond May 2022, 19 months post-vaccination. Even this time consists of initial treatment for only seven months, followed by one month of orthopedic treatment and OT in 2022, after an eleven-month gap. And there are multiple other sources of at least some of Petitioner's pain, for example, her strenuous exercise (lifting) – mentioned as a possible source of her symptoms at her initial appointment, and the back pain she experienced in 2022. At a minimum, these factors should be considered when determining Petitioner's past pain and suffering award.

I agree that *Mantagas* offers the most helpful guidance in this case. And I also find *Niemi*[20] – in which $75,000.00 was also awarded, to be instructive. Both petitioners suffered SIRVAs with similar severity and duration. *Mantagas,* 2023 WL 4573855, at *4-

---

[17] Observing "notable disk degeneration" at the L4-L5 and L5-S1 levels on x-rays taken the same day as this orthopedic visit, on April 28, 2022, the orthopedist proposed scheduling a "sacroiliac joint injection," to which Petitioner agreed. Ex. 14 at 11. The planned injection was administered on May 9, 2022 (*id.* at 7), and Petitioner reported good, albeit temporary (a few days only), relief at her next appointment on May 31, 2022 (*id.* at 4-5).

[18] When she returned to her orthopedist on May 18, 2023, Petitioner described "increasing discomfort to her trapezius and decreased range of motion of the cervical spine." Ex. 22 at 3.

[19] This second MRI revealed the same bursal surface fraying – noted to be unchanged, but also m]ild acromioclavicular degenerative change with minimal capsular edema . . . [and] [m]ild subacromial subdeltoid bursitis," both noted to be "new when compared to the prior examination." Ex. 24 at 2-3. It also showed a slight progression of the previously seen "[m]ild to moderate glenohumeral osteoarthritis." *Id.* at 3.

[20] *Niemi v. Sec'y of Health & Hum. Servs.,* No. 19-1535V, 2022 WL 3135258 (Fed. Cl. Spec. Mstr. July 2, 2022).

7; *Niemi,* 2022 WL 3135258, at *5-6. And the *Mantagas* petitioner also had a significant gap in treatment. *Mantagas,* 2023 WL 4573855, at *4-5. Thus, I find that Petitioner should receive a similar past pain and suffering award of $75,000.00.

## Conclusion

For all the reasons discussed above, and based on consideration of the entire record, **I find that Petitioner's left shoulder injury meets the definition for a Table SIRVA. Thus, causation is presumed, and Petitioner is entitled to compensation in this case. Furthermore, I find that $75,000.00 represents a fair and appropriate amount of compensation for Petitioner's actual pain and suffering.[21] I also find that Petitioner is entitled to $4,182.37 in actual unreimbursable expenses.**

**I therefore award Petitioner a lump sum payment of $79,182.37, to be paid through an ACH deposit to Petitioner's counsel's IOLTA account for prompt disbursement to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a) of the Vaccine Act. *Id*.

This amount represents compensation for all damages that would be available under Section 15(a). The Clerk of the Court is directed to enter judgment in accordance with this Decision.[22]

**IT IS SO ORDERED.**

*s/Brian H. Corcoran*
Brian H. Corcoran
Chief Special Master

---

[21] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required. *See* Section 15(f)(4)(A); *Childers v. Sec'y of Health & Hum. Servs.*, No. 96-0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Hum. Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).

[22] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.